Cases 20-1248 Murrell v. Duane Burton, 20-1347 Ricardo Edmonds v. Randee Rewerts, 20-1448 Anthony Thompson v. OBell Winn, and 20-1752 Ronald Kennedy v. Randee Rewerts. Oral arguments to be in cases 20-1448 and 20-1752. 15 minutes for the appellant, 15 minutes to be shared by the appellees. Mr. Scott Robert Shimkus for the appellants. Good morning, your honors. Assistant Attorney General Scott Shimkus appearing on behalf of the respondents in these consolidated cases. May it please the court. I do reserve three minutes for rebuttal. Your honors, we are here because the bench and bar need guidance about the proper remedy for a Sixth Amendment sentencing violation under Alene v. United States as that case is applied in Michigan. As it stands, the state and federal courts impose divergent remedies for the same constitutional violation. The state courts impose Crosby remands consistent with the Michigan Supreme Court's decision in People v. Lockridge. While the federal district courts in these cases imposed full resentencings. The psychotomy is... What did Alene propose? What was the remedy in Alene? The remedy in Alene was resentencing. Full resentencing. Yes, your honor, it absolutely was. But that remedy does not control in these cases where they are presented on habeas review of state convictions. Why in the world would a federal district court think it ought to follow the state's chosen remedy? I mean, there's strong policy reasons for the federal court to retain its independence and do what it thinks is appropriate in these circumstances. And that is absolutely true, your honor. And it's particularly true on direct review cases with federal convictions. But the context here being state convictions reviewed in federal habeas, that changes the viewpoint a little bit. And we know that... I want to understand the state's position. Are you arguing that for any type of habeas review of a state conviction, a state can control what the remedy would be in federal court? Not that they can control what the remedy should be. And, your honor, I do want to be clear. It probably... Your position is not that the federal court must do what you want it to do as opposed to may do what you want it to do. So here, your honor, our position is perhaps coming back from our briefing just a little bit. Not that the federal court should impose a Crosby remand as the remedy, but that they should allow for a Crosby remand. Just as this court did in Robinson v. Woods, where the remedy imposed was broader. It wasn't a strict resentencing in Robinson. And we're asking for a similar remedy here for simply allowing the state courts to use their chosen remedy of a Crosby remand. And here... So then your argument now is that it's a discretionary matter. That the district courts may choose their remedy or they may choose the remedy of the state courts. So, not necessarily, your honor. My argument here is that the federal court remedy should be broad enough to allow for the state courts to use their chosen remedy. Just as this court did in Robinson. So, for instance, the remedy here should not be remanded for resentencing, as the district courts did in this case. But the remedy should be something more along the lines of Robinson that said, a remedy sentencing proceedings consistent with this opinion and the Constitution. Here it might read something like, sentencing proceedings consistent with the Constitution, Olene, and Robinson. So that remedy would allow the state courts to use a Crosby remand, or it's possible they would choose to do a resentencing. That remedy would turn over the discretion of this court to the state courts, right? So, your honor, if we look at Ewing v. Horton, that's precisely what this court did. This court... Well, you can choose to turn over your discretion. But if you retain the discretion, that means you have the discretion not to do that. So, your honor, that's absolutely true that there is discretion. But it's not unfettered discretion. And that's especially true in the habeas context. And, again, we know that from Ewing. Because Ewing says that the remedy must be tailored to the constitutional violation. And that remedy... It doesn't say that remedies should be tailored to what the state court would do if it were faced with the same problem, does it? It does not say that, your honor. I fully admit that. But what it does say is that it has to be tailored to the constitutional violation. And it has to respect the core principles of habeas, being comity, federalism, and finality. And that is precisely why Ewing reversed what the remedy imposed there was. It was a new trial. Just as here, it was a new sentencing that's imposed. Well, where in 2243 do you find authorization for your request? Doesn't 2243 simply say that the issuance of the writ is to dispose of the matter as law and justice requires? That's the grant of authority to this court. And to the district courts as well, your honor, yes. Yes. To the federal system. Absolutely. So why, what in that language authorizes you to say, and the way you should exercise that discretion, is by returning it to the state courts to do what they deem appropriate? So it's certainly not in the language of 2243. But it is in the language where we usually begin when we're doing statutory interpretation? That is true, your honor. And that is the very language that was used in Ewing versus Horton as well. And still, Ewing said that that discretion is not unfettered. That the discretion must tailor the remedy to the constitutional violation. And if it is broader than that, if it goes beyond that, then it requires correction from this court. And because the correction there was to scale back the remedy a little bit, they needed to do a prejudice determination in Ewing to determine if the broader remedy of a new trial was required. So here, we're asking this court, or excuse me, well, I suppose this court telling the district court that the remedy should be the same here. We need to allow the state courts to conduct a prejudice determination, which is exactly what a Crosby remand is. And even this court in Magnum Raine versus Gidley called a Crosby remand essentially a harmless error determination. And that is exactly what a Crosby remand is. Can Raine only find that a Crosby hearing is not contrary or an unreasonable application of the federal law as determined by the United States Supreme Court? Isn't that a different sentencing context? It's different in the sense that in this case, the remedy has not been executed in the state courts yet, whereas in Magnum Raine, the remedy was executed there. But that's the only difference. Well, isn't that a pretty significant difference? No, Your Honor, because we're asking this court to allow the state courts to do exactly what they did in Magnum Raine. But the problem is the remedy in this case... One says the state courts did not violate federal law as determined by the United States Supreme Court. That's Raine. Correct. That's a narrow ruling. Aren't we in a completely separate context here where the writ is being issued by the federal courts who are granted the power to dispose of the matter before them as law and justice requires? I don't understand why it would be a good argument to say that this court should then turn their discretion, which is made for the purpose of... Let me find the Harris quotation from the Supreme Court, which I think is significant. That we are to dispose of the writ by employing equitable principles with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected. That seems to me a charge to this court to say when we find that there is a constitutional violation, it's our job to surface and correct those errors and to use our own initiative and flexibility in creating a remedy. So doesn't that resolve this issue? Respectfully, Your Honor, no. Why not? Because if we look at Ewing, if that was the case, Ewing would have been decided differently. Ewing would have just simply upheld the new trial ordered in that case. But instead, this court found that the remedy the district court imposed was not correct. It was an abuse of discretion to order the broader remedy, the remedy down the road, if you will, of a new trial as opposed to an intermediate prejudice determination. Why is that a fact-specific determination basic to that case? Because it shows us that the remedy has to be tailored. It has to be as narrow as the violation itself. So here the violation was... I'm struggling because I don't disagree with that. The question is not exactly what the remedy shall be. The question is who gets to decide. And it seems to me that the law grants that to the federal courts in issuing the rent. It does as long as they operate within their discretion. And their discretion... Your idea of their discretion is they must do exactly what the state court would do. Not have to order the Crosby hearing because otherwise you wouldn't be here. So, Your Honor, that... I will admit that is likely what our briefing conveyed. What do you think the other possibilities are at this point? So, Your Honor, the other possibility is the remedy that was ordered in Robinson. We see that... For instance, there is another case that we brought to this court initially under similar circumstances where the district court found a sentencing violation under a lien and imposed a certain remedy. But that remedy was the same one in Robinson. That was Duck Gwynn. I apologize I don't have the case number in front of me. But this court decided that that case, the remedy was fine. It didn't impose a resentencing. But here, the district courts were explicit. The state must resentence these defendants. And that is not the remedy that was ordered in Robinson. Robinson allowed for the state courts... They have to be a different judge. The judge has discretion. Well, Your Honor, the remedy in Robinson specifically came from this court, not from the district court. And I don't mean to step on any toes, certainly. But I do just want to be clear that it was this court that imposed that remedy. And that is the only remedy that we're asking this court for. We're asking this court to allow the state courts, not require them, but allow them to impose the remedy that they deemed correct for these violations. Different states might do different things. Obviously, we're here in the Sixth Circuit. Tennessee might do something different than Kentucky. And Kentucky might do something different than Michigan or Ohio. But we're here because the state courts should be the ones to determine their remedy. And if that remedy happens to be a resentencing, that's fine. That's up to the state court. But they should be allowed to use a Crosby remand if that is what they so choose. Counsel, I'm sorry, I just have one quick question. You're relying on Ewing v. Horton. You didn't cite it in any of your opening briefs. And then you dealt with it in your reply brief. And today that seems to be the basis of your argument. That's correct, Your Honor. I find that kind of strange. It is in our reply brief in Mr. Thompson's case. And I do admit it was not in our opening briefs in Mr. Kennedy's. So what happened in Ewing that you're saying supports your position? So in Ewing, the district court found a Sixth Amendment violation in terms of a juror misconduct claim. But the district court ordered a new trial instead of a Remer hearing. And a Remer hearing is simply a determination of prejudice to allow the jurors to testify. So the court can figure out were the jurors prejudiced by the misconduct. In that case, it was an extraneous influence. A juror had looked up information online about the case. And we held that was an abuse of discretion not to order the Remer hearing? Correct, Your Honor. And was there a state practice of applying a Remer hearing like here you're arguing that would somehow compel us to have gone with a Remer hearing? No. Remer was a United States Supreme Court case. So there was no state practice in place. But this court said that. Okay. So we were ordering the Remer hearing because the Supreme Court of the United States had told us that that was the appropriate remedy. Not because the Supreme Court of a state had told us that. That is correct. But the determination in Ewing still said that the federal courts need to follow the principles of comity, federalism, and finality, and allow the state courts to correct the error in the first instance. And by doing that, it was a prejudice determination. The Supreme Court, U.S. Supreme Court had said that. That's correct. Comity required the Remer hearing in that context. Yes. And it's not necessarily the case that we have a similar situation here. But we do have the problem of this intermediate prejudice determination, which is what Crosby would do. Crosby allows the state courts to say whether the trial court would have imposed the same sentence. I do see that my time is up. We simply ask for a broader remedy. Thank you, Your Honor. Okay. Thank you. Good morning, Your Honors. And may I please support. Daniel Scott Harawa on behalf of the FLE, Anthony Thompson. I'll be taking ten minutes of the time, and then Mr. Amberg will be taking the remaining five. Your Honors, I think the state has made two concessions today that doom its appeal. The first is that the Supreme Court granted a resentencing in Elaine. So it's hard to see how the district court could have abused its discretion in following the relief that the Supreme Court itself granted for the error at issue here. The second concession is that the state also admits that its argument is not based in the text of the habeas statutes. There is nothing in the habeas statutes that limits this court's or the district court's ability to fashion the relief that it deems necessary to comply with law and justice. And in fact, the state's argument that federal courts can find constitutional violations and then have to remand to the states to determine how to remedy it is contrary to the very purpose of federal habeas. As Judge Strange noted in Harris v. Nelson, what the Supreme Court said is that the writ of habeas corpus was created specifically post-Reconstruction to allow federal courts to grant broader relief than states may grant because they recognize that there may be times where states do not follow or do not adequately abide with the federal constitution. And in fact, the state's argument is really contrary to the supremacy clause and our structure of courts and our structure of government. There is no case that the state cites that stands for any remote proposition that states can cab in federal courts or the federal government's exercise of its power when it comes to the federal constitution. And the idea that comedy requires some kind of different outcome here is just wrong. The Supreme Court... The issue for you is that comedy is one thing, deference is another. Yes, Your Honor. And I think it's not comedy in a vacuum. So I think O'Sullivan v. Borkel, which the state cites in this brief, is a really good example of what comedy requires in this instance. And what the Supreme Court said there is that comedy requires that state courts get the first pass at correcting a constitutional violation. And here there's no question that these claims were raised in a state court post-conviction review and the state courts denied the claims. And Michigan resisted these claims throughout state court post-conviction proceedings. And so that is the comedy that's required, that we give states the first chance to correct their constitutional mistakes and that if they rule one way or the other, federal courts give that ruling some deference. Counsel, I guess what's troubling me most about your position is that it seems to me it incentivizes defendants to go straight to federal court because if you're going to get a full resentencing in federal court, why would you ever seek relief in state court if you can only get the Crosby relief? So, Your Honor, I think that's where the other provisions of habeas and adepo apply. So a state defendant can't just jump right to federal court to challenge their state conviction or else there are procedural bars in place. So they have to go through the state post-conviction proceedings first, again, as comedy requires, to allow the state to correct that error. So I don't think a federal court could properly hear a state… So if they avail themselves of the state proceeding, they get the Crosby hearing and then under our precedent, under adepo review, we would probably say that was fine. Yes, Your Honor. But now you're saying you're coming to federal court and saying you should get more. That just seems odd to me. So, Your Honor, I think to your first scenario, I think that's exactly what happened in Magnum Rain, that Mr. Rain went through state post-conviction proceedings. The court applied the remedy that Mr. Rain asked for and the court said that was not contrary to federal constitutional law. Because it was an adepo standard. Yes, Your Honor. And Your Honor, I don't think this court has to adopt a binary view of the proper relief here because this is an abusive discretion standard and because habeas is ultimately an equitable tool. I think this court can say that the district courts, based on the facts before, based on the case, can decide what remedy it wants to grant. And I think the district court in Mr. Thompson's case was very clear in that given the facts of Mr. Thompson's sentencing, given the fact that the judge court guidelines were to increase Mr. Thompson's sentence, given the fact that the trial judge there was committed to a bottom-of-the-guideline sentence, and given the fact that Elaine granted a resentencing, that the court decided to use its discretion to grant a resentencing. I just don't see how it can be an abusive discretion for a federal court not to follow the remedy chosen by the Michigan Supreme Court. I'd like to address Ewing because I know the state focused on that a lot and I think it's worth discussing because I don't think it's controlling or even persuasive. So in Ewing, as the state noted, the issue there was whether the juror was prejudiced by extraneous information. And so at the point of federal habeas review, all we knew was that the juror had Googled information before or during deliberations, but it wasn't clear whether or not that information prejudiced the juror's views. And so the federal court there decided to grant a new trial rather than grant the Remmer hearing, which the Supreme Court had said very explicitly that that is the remedy for when a juror receives outside information. You need to determine whether that information is prejudicial. And so what the court found problematic in... So in the absence of that Remmer hearing, you've got a new trial that may have been totally unnecessary. Yes, and that is exactly what this court said. The court said the reason why the habeas relief was erroneous there was because the court granted relief for a constitutional error that had yet to be shown. Because the constitutional issue was whether that juror was biased or not, and the defendant hadn't proved that bias yet in Ewing, which that just isn't close to the situation here where the state concedes the underlying constitutional violation. Michigan Supreme Court has conceded that the sentencing scheme was unconstitutional. This court in Robinson has conceded that the sentencing scheme was unconstitutional. So Ewing just has no kind of application here, I think. And again, the Supreme Court had explicitly said, this is the remedy that we have chosen for these types of errors in this particular posture, where the Supreme Court consistently for Booker and in Alain, as this court said, you have to look at what the Supreme Court did. And in both cases, the Supreme Court granted a resentencing. So again, I don't see where the state's argument is based in the text of the statute, in the purpose of habeas, or in any of the cases that it cites. Really quickly, I would like to raise the issue of waiver, because I do think this court should enforce the state's waiver in Mr. Thompson's case. As this court knows, if an argument is not raised in the district court, it's waived on appeal, and it seems to me to be really perverse to say a district court abused its discretion by not granting a remedy that the state never requested in the district court. The state didn't raise this issue in the district court, and because the district court... So I just don't see how it can be abuse of discretion now when the state comes up with this argument for the first time on appeal. And to the extent this court wants to reach that issue, all of the appellees are not similarly situated in pressing waiver. But Mr. Thompson explicitly raised this waiver, and I think that is another basis for this court to affirm the district court's ruling in this case. At what point did the state concede the unconstitutionality of its mandatory sentencing scheme? So in Lockbridge, obviously the Michigan Supreme Court conceded the unconstitutionality. In these proceedings, the state did not concede the constitutional violation until its motion for a stay pending appeal. And so the state has just fought this all the way along. So the state could have argued... If the state had conceded earlier, it presumably would have argued for the remedy that it now seeks. Yes, Your Honor, and this case was... I mean, Mr. Thompson was sentenced after a lane was decided, so it wasn't as if this issue was sprung on the state. I mean, the state of the law has been very clear, and in Lockbridge, the Michigan Supreme Court said, we're just clearly following a lane. And so it seems to me it can't be that the state fought this every step of the way in direct appeal and state post-conviction proceedings, then in federal district court, and then somehow says, well, we need to send it back to the state courts for it to grant the remedy that it could have gotten had the state made the necessary concessions in the first place. And so if there are no further questions, I will turn it over to Mr. Amber for the remaining minutes. Thank you. Good morning, Your Honors. May it please the Court. My name is Jim Amberg. I represent Mr. Kennedy. I also have my son with me. It's the first time he's ever been to court, so day one of the apprenticeship. It's great to do an appellate argument when you have such a wonderful counsel come before you and exactly hit every single point you wanted to make, and that's exactly what happened here. Professor Harawa did a wonderful job of explaining our position as well as his position. I agree with him wholeheartedly. I think my role is a little different here. I'm more of a trial person. I'm from Michigan, CJA panel lawyer in the Eastern District, down in Detroit. I do a lot of felony trials in the state system. I see the practical reality of what happens in situations like this. I would say this about the discretion of our district judges in Detroit. I have practiced in front of every one of the judges who issued opinions in this case. I agree wholeheartedly with all of them. I thought Judge Stee did a great job in saying how I felt about the case. But they're ordering resentences for a reason, and the reason is this. If that doesn't happen, Mr. Kennedy is never going to get that fair shake that he deserves. When you go into a Michigan sentencing, a felony sentencing, the guidelines are presented, and the judge will make a determination of the sentence based on the guidelines. My client's guidelines are going to change here because of the conceded constitutional error, and so I think it's only fair that he get a resentencing based on these new guidelines. To ask this circuit court judge out in Oakland County to just simply kind of go back to the old sentencing and just sort of look at the guidelines and make a new choice, I think the district court, and in our case it was Judge Edmonds, recognizes implicitly that what will ultimately happen is you'll basically get a rubber stamp on that old sentence, and that's just not right. One thing that the Attorney General did put in their brief at the end of it, and I'm glad I'm here for this part because it hasn't been discussed yet, is the practical remedy. How will this happen? How are we going to do this resentencing? Arguments were made at how difficult it would be to have a resentencing, and I completely disagree with that. I have handled many resentencings, felony resentencings in Michigan. My client is in the Michigan Department of Corrections. It would be very easy to bring him over to Oakland County. We could even do that via Zoom. I have done state and federal sentences via Zoom since the pandemic started and would have no objection, I think, to doing that, even in this case if we had to. As far as regenerating a pre-sentence report, that was an argument by the state in this case. That is also something that is done all the time, very easily done. It would take less time than it would the MDOC probation officer to generate a new report, so I think that's a non-issue as well. As far as the issue of any potential victims and the effect that this may have on them for a full resentencing, victims are given that opportunity at the original sentencing to express their feelings. I'm sure that happened here. I didn't represent Mr. Kennedy in his underlying trial, but the probation department through MDOC generally will keep those statements, and so I think those would be available. I'm sure that the prosecutor, whoever ultimately would be handling this resentencing, could see if those victims wanted to speak again. I think that's all I've got to add. I disagree completely with the state in their arguments with RAIN being controlling. Clearly it's not. It's totally different than our case here. Mr. Kennedy never got that chance to have his guidelines be viewed as advisory, unlike the RAIN defendant did. Thank you all very much for your time, folks. Unless you have any other questions, I don't have anything to add. Thank you. May it please the Court, Your Honors. I would just like to address four points that opposing counsel made relatively quickly. The first point is that Mr. Horawa argued that the state courts sort of squandered their opportunity to correct this in the first instance, and therefore we don't have a comedy issue here or a finality issue here, but that's not the case. The only reason there is a constitutional violation in this case that is applicable to these defendants is because of this Court's decision in Robinson v. Woods, which did not exist at the time that these defendants were sentenced or when the state courts decided these cases. And so this will be the state court's first opportunity to correct these problems and that the way that they should be allowed to correct them is how they choose to correct them. Second is, Judge Gibbons, you mentioned that the new trial in Ewing may not have been necessary, and that's why the Remmer hearing should have been the intermediate remedy before the new trial was granted, and that's precisely the situation here, that the Crosby remand will be that intermediate remedy to determine whether we need resentencing. That's exactly what a Crosby remand does. The constitutional violation here is known. It was unknown in the other case we were talking about. Well, Your Honor, I do want to be clear that there was a constitutional violation in Ewing. It was a due process violation for the deprivation of that hearing, the deprivation of that opportunity to show whether prejudice was there. And the same situation is here. These defendants, yes, we agree, were denied the opportunity to have their sentences evaluated under advisory guidelines, but that's what a Crosby remand does. It allows the state courts to look at it through the lens of advisory guidelines. I will just address the waiver point briefly. There can't be a waiver in this case because there was no waiver in Ewing. That was explicitly in our briefing in the reply brief. The remedy in Ewing was never discussed in the state court. It was explicitly discussed in this court, and it's the same situation here. Lastly, to Mr. Amberg's policy points, that the defendants here should get a fair shake and that the guidelines may go down upon resentencing, but that's not necessarily true. In this case, in all cases, a resentencing is a new sentencing. Therefore, everything is game. The pre-sentence investigation report will be updated. It will consider the defendant's time in prison. It will consider all information. They can use judge-found facts. That is not barred. The Michigan courts have already decided that that is how a resentencing under Lockridge will occur. And so it's possible the guidelines will go down. It's possible the guidelines will go up. It's possible they'll stay exactly the same, even with a resentencing. And to the point about the victims, it's not that the victims will be denied an opportunity here to speak. It's that they will be forced back into this situation with a resentencing. That does not happen with a Crosby remand. And it's not the difficulty of the resentencing. It's the level of resources and the re-involvement of victims that we're concerned about as far as resentencing goes. I see I'm out of time, Your Honors. I'm happy to answer any other questions. Thank you, Your Honors. We appreciate the argument that all of you have given, and we'll consider the cases carefully. Thank you.